Good morning, Your Honors. I'm David Martin, and I'm the attorney for the petitioner Richard Brewer, and would request that I have one minute left for rebuttal. You bet. And looking at this case, I think the most important thing to realize is what was happening at the time, which is you had three trials going on at the same time, huge case, and when public defenders came in and said they had to do a conflict, and I think with more than sufficient grounds to justify that conflict, the only way the case was not going to be delayed significantly or separated from the trial was if Mr. Brewer agreed to accept Rappel as her attorney. And the entire case, the entire way of looking at this case, I think is, yes, it's a due process violation or extensor. It wasn't present in the important part of the meeting, but what was the prejudice? The prejudice is the right to choose his counsel. Now, Let me back up. You said she declared a conflict. What exactly was the conflict? Well, the legal conflict of interest. The legal conflict of interest, they did not believe she could perform constitutionally effective counsel. Okay. That's their belief. What's the conflict? Was she representing a co-defendant in the case or something like that? No. What's the legal conflict? The legal conflict that was stated was the public defender's opinion based upon things that they observed, that her emotional state was such, and certainly there had been a significant emotional problem going on, that she would be unable to perform constitutionally sufficient counsel. The facts were extraordinarily extreme. Well, that goes to, I think as Judge Silverman is suggesting, to maybe effectiveness or competence, but that's nothing to do with a conflict. There are – I wasn't prepared to argue. That hasn't been an issue in the briefing. But it's been established that that is one of the issues that can be brought as a conflict, particularly since the public defender's office has the responsibility of ascertaining whether or not the people that they send out there to handle their cases are, in fact, performing effectively. That's their job. And it is their duty to the court to inform them when I think that is not happening. And in their opinion, it's not likely to happen in the future. That was not disputed, as far as I know, in any of the briefing, or for that matter, with the magistrate. The issue came then, well, if, in fact, the client goes ahead and accepts this attorney, then the public defender could be let out of the case, which the public defender was. The public defender was the actual counsel of record. And then Repcow could then take over as an independent counsel. And in order to do that, he had to get Mr. Brewer's permission. He had to sign off on it. I don't see politically how they could have possibly turned the public defender down under these facts. I mean, there were extreme facts. We're talking about sex phones to a former client, and the publicity of this would have been enormous. I just don't see any possibility that the court had any choice but to see if, in fact, Mr. Brewer would agree to new counsel, which then puts it straight into right to counsel. She's having some kind of love affair with another client. How does that affect Mr. Brewer? Well, the love affair was just a small part of it. He's in jail. Who is? The lover. Okay. The love interest. Okay. He's in jail. She is violating a number of rules. She is violating what the public defender is asking her not to do this. She's losing her pass-through privileges, where they'd be able to talk in terms of conversing the case. Okay. And so what you have to wonder, if I could finish on it, what you have to wonder is if her emotional state, because she's so focused on losing her employment at 22 years, getting in the kind of difficult issue she got into with the county jail, that her emotional stability and concentration on the case would be extraordinarily affected. Okay. How did that actually affect Mr. Brewer? You mean down the road? Yeah. Breakdown of attorney-client privilege, which, as I was getting to, that's when you talk to right to counsel, that's the only thing that's really involved. When a client chooses his counsel, it's never presumed the client's going to have some magical choice in picking the best one. She tried the case, ultimately, right? She did. Did she do something wrong in the trial? Did she make some mistakes because of this? We're not claiming ineffective assistance to counsel. It's an extraordinarily difficult burden, and I don't think that they could be made to do that. What I'm getting at is I don't see how any of this actually affected Mr. Brewer. Maybe you can point that out. Well, under, again, Bradley v. Henry. I look at that case, and that's the prior authority I'm working on. I know it's a 542 decision. There's some problems with the plurality. Bradley v. Henry, the whole question of the choice of right of counsel came up. The 5 said, break down a relationship between the client and the attorney is sufficient prejudice. 4 said it's structural, you know, it's automatic, and then 2, descendant. And so neither of the 5 or the 4 state you have to show ineffective assistance to counsel. And also, if you look at it, if you had to show ineffective assistance to counsel, there would be no such thing as right to counsel. Why?  Why would you bring in another requirement of proof? And why also have to prove right to counsel? If, in fact, that were the rule, there would be no reason whatsoever to have a right to counsel rule. I mean, it would be negatory. Remember, it would be totally negatory. If, in fact, you had to show ineffective assistance to counsel, there would be no right to counsel. It would just simply be ineffective assistance to counsel. I just want to make sure I've got this right. After Brewer found out about the relationship with the other inmate, the judge asked whether he wanted to keep with Repco, and he said yes. No, wait, wait. No, no, no. No, no. That's not the fact. That's not the facts at all. Okay. Well, okay. There's the evidentiary hearing part of what our position is, which is full of support in the record of the trial, is he didn't know anything about the relationship with the client. At first. At first. Okay. Then he found out about it. He finds out about two months in the case when somebody slips him a piece of paper and he asks his attorney about it and she's very cold and the relationship was never the same. From that point on, they have nine Marsden hearings, the last of which she was out there waving. After it came out in the papers, she had this relationship. Then she decides to go out waving at her client. And when he confronts her in court about it, she lies to it straight to his face, which I think is about when you have your attorney lying straight to your face, knowing your attorney knows what you're saying is untrue. I don't know how you get a larger breakdown. How do we know she was lying straight to his face? Well, she admitted to it. Where did she admit to it? In the evidentiary hearing. I understood she denied it. No. She said, yes, I shouldn't have been up there waving at the client. No, she admitted that she was out there waving on that parking lot. That's in the record. It's in my briefing. She admitted to that. I wasn't able to get into it because the magistrate wouldn't let me get into it. But she did admit to that. And she admits she's up there. And in the hearing that happened afterwards, when he confronted her with it, she denied that it ever occurred, evidentiary hearing. She admitted. Also, the right to counsel is my position going back to that. It's the right to counsel cannot possibly have the same prejudice standard as ineffective assistance to counsel unless, of course, or unless it's ruled that right to counsel is negatory because that completely eviscerates any right to counsel. After you prove ineffective assistance to counsel, right to counsel then becomes meaningless because you've got the same standard. There's no reason why any attorney would want to try and prove a separate thing to get to the same place. So consequently, even if you look at this 542 decision in Bradley's Henry, you still have the problem of, well, what's the prejudice when you're talking about right to counsel? Well, it has to be a breakdown in attorney-client relationship. There's no other possible thing that it relates to, and there's no other possible attorney. Either you have to say, well, there really isn't such a thing, or there has to be a different standard. Thank you, Mr. Martin. Good morning. May it please the Court. Good morning. Justin Riley on behalf of the Warden. Appellant raises an interesting, I guess, enough argument today about prejudice, and it is supported by what he claims to be a 542 decision or in Bradley v. Henry, which is absolutely not precedent. He would be asking this Court in finding some new argument for prejudice to overturn this Court's en banc decision in Campbell v. Rice and the follow-up decision in Hubby v. Ayers in which both courts specifically held and actually dodged the question I'm sorry, not dodged, bypassed the question of constitutional error to find that there must be some showing of prejudice in counsel's performance in a right-to-presence case. In what kind of case? Right-to-presence at a critical stage of the hearing. Campbell v. Rice is this Court's en banc decision from 2005 cited in the briefs, and Hubby v. Ayers is this Court's panel decision in 2006 cited in the briefs. Both of those cases handled a hearing in which the defendant was excluded, and the hearing was all about trial counsel's competency to proceed or the effective assistance of counsel in those two cases. The Ninth Circuit here in reviewing those cases bypassed the constitutional error issue and went straight to prejudice, and that prejudice analysis is contrary to Bradley v. Henry's plurality opinion, which isn't precedent. Of course, there are two other grounds for denial here. The first, obviously, is the State Court's decision here denying relief was a reasonable application of clearly established Supreme Court precedent. The State Court summarized some 50 pages of hearing transcripts in which the trial counsel, the Office of the Public Defender, and the trial court all explained the ramifications of what was going on with Repco's employment, and then summarized the six-page hearing in which defendant was excluded, and then decided that that six-page hearing wasn't a critical stage because the information in that six-page hearing was essentially the same as all the other information that was provided in Brewer's presence. And the State Court ---- Well, except, you know, he was, I don't know, one way of looking at this is Brewer was never, in the end, provided with all of the information. Here's my problem with this case. The way the State Court looked at it in all these proceedings, and most of the participants looked at it, Brewer's lawyer was a Sacramento County Federal, I mean, public defender. That's right. Right? So, you know, they took the position, or some higher up in the office, maybe the public defender himself, took the position that, well, you know, we can tell the deputy assigned to the case what to do, when to be on, when to get off. And, most importantly, they said, well, there are things that occur in the office that we consider, you know, personnel matters, so we don't want the client to hear it. And he was excluded from the personnel decision. So in that case, it's clear to me that his attorney, the public defender, wasn't acting in the defendant's interest. He was acting in the interest of, you know, preserving the personnel practices of the office. Right? Possibly. If you ignore the evidentiary hearing transcript, I can see where that would be an interpretation. But another reasonable interpretation, which the State Court came to, is that the information in that six-page hearing was essentially the same as the information in the 50 to 100 pages surrounding it in which they took his waiver. And now, remember, in a right-to-presence case, it's not part of the analysis to go a year down the road and figure out all the information that might have come out in that year. You have to go and limit yourself to that six-page hearing, because the right-to-presence is all about that six-page hearing and what the defendant would have done immediately after. So if you limit yourself to those six pages, there really isn't anything in there that tells you something completely different from the 100 pages that surround that limited six-page hearing. And to support that point, and if this Court wants to get to the evidentiary hearing transcript, which, oddly enough, helps me, but I have to argue that this Court should ignore, but if this Court gets to that evidentiary hearing transcript, the district court found Repco to be a lot more credible than the appellant here. And ---- Did she admit to lying about waving to an inmate from the building across the street? I don't remember that specifically. There was a lot of questioning going on at the evidentiary hearing that was a little vague, and Repco didn't quite remember certain things having to do with when she lost her pass through, privileges and things like that. And what was happening is Repco, throughout the trial proceedings, was having to argue to the trial court to get her pass through privileges back. There was a window at the jail in which she and a defendant could pass back and forth documents. And she lost those privileges. So what she was doing throughout trial is she was arguing to the trial court that she should get those privileges back. And as an advocate, she was telling the trial court, listen, you know, I don't know why I'm still having these privileges revoked. We need those back. We need them for communication purposes. And what counsel was doing at the evidentiary hearing was trying to show that Repco did know why she lost those privileges. And Repco explained on the stand that, yes, I made some arguments to the trial court regarding my pass through privileges that indicated that I didn't know what was going on, I was denying things. But what I was doing is I was acting as an advocate to try to get those pass through privileges back. My client at all times knew what was going on. I was representing to the trial court vaguely that I didn't know the specific reasons why my pass through privileges were taken away. By the way, in retrospect. Yes. You think this is a proper case in which to conduct an evidentiary hearing so that we can consider the. Oh, absolutely. What was brought up at that hearing. In my brief, the very first argument is 2254d1 controls. There is a merits adjudication here. The merits adjudication was reasonable in light of the. I'm asking because you referred quite a bit to what happened at the evidentiary hearing. Right. Those were all very separate arguments. The first argument was under d1, the State court was reasonable. And actually my very first argument was this Court under Pinholster should completely ignore the evidentiary hearing, which was an odd argument for me to make, like I said, because I think it actually helps me here. But if this Court does get to that evidentiary hearing, the evidentiary hearing forecloses relief. Finally, in the last two minutes, unless there are any questions on those first two points, I'd like to address prejudice real quick. One of the first things counsel said when he took the stand was the prejudice here is the right to choose counsel. But the United States Supreme Court has clearly stated in its precedent that a defendant has no such right to choice of counsel when that counsel is being appointed to him. The right to choose counsel is only if the defendant can afford his own counsel. And that case is actually cited in Bradley v. Henry there at page 1098. The United States Supreme Court case is Gonzalez v. Lopez. Bradley clearly states the right to counsel of choice doesn't extend to defendants who require counsel to be appointed. As I said, Bradley v. Henry is a plurality opinion nonetheless. The last point I'd like to make is the conflict. This panel had a question for counsel about where was the conflict. Well, the State Court always maintained that there was no actual conflict. The reason the State Court was going through this procedure as it stated was it was potential conflict. And the trial court was acting here out of an abundance of caution. This was a very complicated case. It was a very complicated issue. And that's why the trial court spent over a hundred pages of transcript trying to flesh out what the problem was and then notify defendants as to what his rights were. No court has ever found conflict here. It was only the potential of conflict. And that brings me to my last point, that appellant has conceived that the counsel was effective here. He was forced to have effective counsel. He was forced to take effective counsel all the way through until the verdict. And the Constitution just offers him no more. Unless there are any other questions, I'd love to submit them. Thank you, Mr. Riley. Thank you. Mr. Martin, back to you. You've got about a minute left, I believe. It's going to be hard to go through all the misrepresentations, Your Honor, but I'll try and talk quickly. First, there was no concession of effective counsel. We said we don't have ineffective assistance of counsel. That's not the same thing, as I'm sure you all know. Two, in terms of the hearing doing everything, in fact, as I argue and look at it, every single thing that was said in front of his presence was a conclusion except for the fact she cried and the fact there was a conflict with PD. Conflict with PD got resolved. And, of course, she was crying because she had conflict with her own office. Okay. Everything else was a totally conclusion. No facts came out until the closed hearing. All right. In terms of Hovey, Hovey was a case that did not evolve. And also, going back, you don't have a right to choose your counsel. What we have here is different. He definitely has the right. He's been given the right. In my opinion, he had to give the right to choose whether or not he kept rep count. That's not the same thing as you coming into court, well, I want new counsel. You're right there. You have the right here. That's the same thing as having independent counsel. He had the right to refuse rep count. Thank you. Mr. Riley, thank you as well. The case just argued is submitted. Good morning, gentlemen.
judges: Garbis, Tashima, Silverman